UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CENTRAL CRUDE INC** | **CASE NO. 2:17-CV-00308** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LIBERTY MUTUAL INSURANCE CO ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court are three (3) Motions: (1) "Liberty Mutual's Motion for Partial Summary Judgment" (Doc. 82) filed by Liberty Mutual Insurance Company, (2) "Great American Assurance Company's Motion for Summary Judgment" (Doc. 83), and (3) "Liberty Mutual Insurance Company's Motion for Partial Summary Judgment Concerning Bad Faith" (Doc. 85).

## STATEMENT OF FACTS

Liberty Mutual Insurance Company ("Liberty Mutual") issued a Commercial General Liability insurance policy (the "Policy") to Central Crude, Inc. ("Central Crude") with effective dates of September 1, 2006 to September 1, 2007.[1] Great American Assurance Company ("Great American") issued an umbrella insurance policy (the "Great American Policy") to Central Crude; the Great American Policy is in excess of the Policy issued by Liberty Mutual.[2]

---

[1] Defendant's exhibit 8.
[2] Great American previously moved for summary judgment maintaining that the Great American Policy did not cover pollution; the motion was denied. Doc. 56.

The Policy contains a Total Pollution Exclusion Endorsement which precludes coverage for damage caused by a discharge or release of pollutants:

This insurance does not apply to: . . .

    f. Pollution

        (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

        (2) any loss, cost or expense arising out of any:

            (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify of neutralize, or in any way respond to, or assess the effects of "pollutants"; or

            (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".[3]

The Policy also contains a Time Element Pollution Liability Coverage Extension Endorsement that modifies the Policy in relevant part as follows:

1. INSURING AGREEMENT

a. Subject to b. below, we will pay those sums that the insured becomes legally obligated to pay for:

(1) Compensatory damages for "bodily injury" or "property damage" arising out of the discharge, release or escape of "pollutants";

(a) From a contained state at any premises, site or location that is currently owned or occupied by, rented or loaned to the Named Insured; or

(b) From a contained state at any premises, site or location on which the Named Insured is performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by the Named Insured; and

---

[3] Defendant's exhibit 8, at LM-15.

> (2) "Cleanup costs" that result from a discharge, release or escape of "pollutants" described 1(a) and 1(b) above.
>
> b. Coverage provided under this endorsement applies only if the original discharge, release or escape of "pollutants" from a contained state:
>
> (1) Commences during the policy period; and
>
> (2) Begins and ends completely within the Time Element Period in the Schedule of this endorsement;
>
> provided the discharge, release or escape of "pollutants' is reported to us within the number of calendar days shown in the Schedule of this endorsement from the specific date of commencement . . . .[4]

The Time Element Period for the endorsement is "5 days."[5] The Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed."[6]

On January 4, 2007, Central Crude discovered a discharge of crude oil on its property; the source of any release has never been determined. The parties dispute the source of the leak as well as its duration. Central Crude made a claim for the release which Liberty Mutual denied.[7]

On January 3, 2008, Columbia Gulf Transmission Co. sued Central Crude (the "CGT lawsuit") and other defendants in state court alleging claims related to the January 4, 2007 spill.[8] Liberty Mutual denied coverage, including defense for the CGT lawsuit.[9]

---

[4] Id. at LM-41-43.
[5] Id.
[6] Id. at LM-65.
[7] Defendant's exhibits 4 and 5.
[8] Defendant's exhibit 6.
[9] Defendant's exhibit 7.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

This lawsuit involves a crude oil leak or leaks. Central Crude is an oil purchaser who transports oil via three (3) pipelines[10] on property it owns in Paradis, Louisiana ("Paradis property").[11] On July 17, 2006, Central Crude discovered a crude oil leak on the Paradis property which it determined originated from a pinhole leak in its six-inch pipeline.[12] Central Crude attempted to repair the leak, but did not pressure test the line to verify that it had stopped.[13]

About six months after the July 2006 discharge, on July 4, 2007, a crude oil discharge or release was discovered. The parties do not know where this discharge or release originated. Liberty Mutual and Great American assert that it originated from the Paradis property and crossed the boundary between the Paradis property and an adjacent property owned by Chevron. Liberty Mutual relies on the deposition testimony of Central Crude's Operations Manager, A.J. Vincent. Central Crude contends that it is impossible for the 2007 oil spill to have originated from its pipelines, or from the pinhole leak which occurred in July 2006.

A.J. Vincent, Central Crude's Operations Manager, described the 2007 oil spill as "four or five acres of property that was covered with oil, less than a half-acre was on

---

[10] These underground pipelines include an 8-inch pipeline, a 6-inch pipeline, and a 4-inch pipeline.
[11] Petition, ¶ 9; Defendant's exhibit 1, A.J.Vincent depo. p. 17:23-22:8.
[12] Id. p. 27:17-30:6.
[13] Id. p. 30:7-25.

[Central Crude's] side."[14] Central Crude reported the leak to the Louisiana Department of Environmental Quality ("LDEQ") and other agencies, including the Louisiana Oil Spill Coordinator's Office ("LOSCO").[15] Central Crude acknowledged to LDEQ that the second discovered spill (the 2007 oil spill) resulted in the removal of more than 25, 000 gallons of fluid.[16] The report to LDEQ stated that "the source of the release is unknown."[17]

Central Crude also relies on the deposition testimony of Mr. Vincent as well as its retained expert, Dr. James Joseph Connors, Jr. and his expert report. [18]

Liberty Mutual seeks to dismiss Central Crude's claims for insurance coverage of its expenses for cleaning up the property following the oil spill and for defense in the CGT lawsuit. Liberty Mutual also seeks to dismiss Central Crude's bad faith claim under Louisiana Revised Statutes 22:1892 and 22:1973. Great American, the excess insurer, moves to dismiss Central Crude's claims of coverage based on its position that because Liberty Mutual's policy does not provide coverage, the umbrella policy it issued to Central Crude does not provide coverage.[19]

*Total Pollution Exclusion Endorsement*

Liberty Mutual maintains that the Policy's Total Pollution Exclusion Endorsement clearly and unambiguously states that the insurance does not apply to property damages

---

[14] Id. p. 37:18-20.
[15] Defendant's exhibit 2, attached to Corcoran depo. as exhibit 2.
[16] Id.
[17] Id.
[18] Plaintiff's exhibit 1; Defendant's exhibit 1, A.J. Vincent depo.
[19] This Court denied Great American's prior summary judgment motion based on Central Crude's argument that Central Crude and Great American intended Great American to provide pollution coverage to the extent that the underlying Liberty Mutual Policy provided such coverage. (Memorandum Ruling, Doc. 56).

"which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."[20]

Liberty Mutual maintains that the Policy's Total Pollution Exclusion Endorsement bars coverage. Liberty Mutual refers to the following Policy language under the "**TOTAL POLLUTION EXCLUSION ENDORSEMENT**":

This insurance does not apply to:

**f. Pollution**

> **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or party but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.[21]

The Policy defines Pollutants to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, recondition or reclaimed."[22] Liberty Mutual relies on *Doerr v. Mobil Oil Corp.,* 774 So.2d 119, 135 (La. 2000).[23] Under *Doerr,* the Policy's Total Pollution Exclusion applies if three conditions are met; (1) the insured is a "polluter;" within the meaning of the exclusion; (2) the injury-causing substance is a "pollutant;" within the meaning of the exclusion; and (3) a "discharge, dispersal, seepage, migration,

---

[20] Defendant's exhibit 8, LM-65.
[21] Defendant's exhibit 8, LM-15.
[22] Id. LM-65
[23] The *Doerr* decision provided an exhaustive analysis of the history of pollution exclusion provisions, but ultimately found that the underlying claims were not environmental pollution claims. The purpose of the exclusion to exclude coverage for environmental pollution was meant to strengthen environmental protection standards by imposing the full risk of loss due to personal injury or property damage from pollution upon the polluter by eliminating the option of spreading that risk through insurance coverage.

release or escape" of a pollutant by the insured within the meaning of the policy.. Liberty Mutual argues that all three conditions are satisfied. *Id.*

"The determination of whether an insured is a 'polluter' is a fact-based conclusion that should encompass consideration of a wide variety of factors." *Id. Doerr* further explains that:

> the trier of fact should consider the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured' business, who the insurer typically insures, any other claims made under the policy, and any other factor the trier of fact deems relevant to this conclusion.

In *Lodwick, L.L.C. v. Chevron U.S.A., Inc.,* 126 So.3d 544 (La.App. 2 Cir. 2013), a legacy case where there was long term pollution damages alleged, the Court found that pollution exclusions are applicable to exclude coverage, noting that this is the very purpose of a pollution exclusion. Liberty Mutual argues that Central Crude is a polluter because there is no dispute that a dispersal or release occurred, and crude oil is a pollutant, citing *Evanston Ins. Co. v. Riceland Petroleum Co.*, 369 F.Supp.3d 673, 680 (W.D. La. 2019); *Grefer v. Travelers Inc. Co.,* 919 So.2d 758, 768 (La.App. 5 Cir. 2005). Thus, Liberty Mutual maintains that the prerequisites of *Doerr* are met and the Policy's Total Pollution Exclusion bars coverage for Central Crude's claim for clean-up costs.

Central Crude complains that Liberty Mutual's analysis requires Central Crude to prove its fault on the Time Element Endorsement coverage, which Liberty Mutual maintains that Central Crude cannot prove, while at the same time, Central Crude cannot

prove its innocence as to the Total Pollution Exclusion. In other words, Central Crude had a covered spill, but Central Crude is not a polluter.

Central Crude explains that the Total Pollution Exclusion Endorsement is intended to hold accountable those parties or entities that actively cause pollution events by preventing bad (or negligent) actors from recovering pollution damages.

Central Crude also relies on *Doerr*, to define how an insurance contract should be interpreted:

> An insurance policy is an aleatory contract subject to the same basic interpretive rules as any other contract (citations omitted). This interpretation of an insurance contract is nothing more than a determination of the common intent of the parties (citations omitted).
>
> …
>
> When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. . . Importantly, when making this determination any ambiguities within the policy must be construed in favor of the insured to effect, not deny it, coverage. . .[24]

Considering this language, it is Central Crude's burden to prove the incident falls within the policy's terms, *i.e.,* as to coverage, and it is Liberty Mutual's burden to prove the Total Pollution Exclusion. When making this determination, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage. See *Yount v. Maisano,* 627 So.2d 148, 151 (La. 1993); *Garcia v. St. Bernard Parish Sch. Bd.,* 576 So.2d 975, 976 (La.1991).

---

[24] *Doerr*, at 123-125.

As noted by Liberty Mutual, there is no dispute that a dispersal or release occurred, specifically "four or five acres of property that was covered with oil."[25] Furthermore, *Doerr* directs a court to consider "the actions of the alleged polluter" and not whether the insured actually is culpable as a polluter. 774 So.2d at 136. A pollution exclusion precludes a duty to defend based on allegations in the petition. See, *e.g., United Specialty Ins. Co. v. Sandhill Produc. Inc.,* 2021 WL 1082224, at **7-8 (W.D. La. 2021).

Also, in *Doerr*, the court directed that the exclusion should be construed "'in light of its general purpose, which is to exclude coverage for environmental pollution[.]'" *Id.* The Court finds that Central Crude is a "polluter" as defined by the *Doerr* court. As noted by Liberty Mutual, Central Crude's business involves the transportation of large quantities of crude oil between producers and sellers. See *Apollo energy, LLC v. Certain Underwriters at Lloyd's London,* 387 F.Supp.3d 663, 672 (M.D. La. 2019) ("The court has little doubt that, under the clear and unambiguous language of the policy, oil is, at the very least, a 'liquid . . . contaminant' such as a 'chemical.'"; *Grefer v. Travelers Inc. Co.,* 919 So.2d 758, 768 (La.App. 5 Cir. 2005) ("Oil drilling and related activities present a clear and obvious risk of pollution."). Thus, the Policy's Total Pollution Exclusion bars coverage for Central Crude's claims for clean-up costs for the January 2007 oil discharge or release. Accordingly, Central Crude cannot recover its remediation expenses or defense costs in the CGT lawsuit, nor does Liberty Mutual owe any duty to indemnify Central Crude for tis clean-up expenses.

---

[25] Defendant's exhibit 1, p. 37:18-20.

*Time Element Pollution Liability Coverage Extension Endorsement*

Liberty Mutual maintains that not only does the Policy clearly exclude coverage for pollution liability under the Policy's Total Pollution Exclusion, it provides only limited coverage for oil spills that (1) begin and end within five days; (2) originate from a contained state; and (3) originate on premises that Central Crude owns, occupies, and/or on which it is conducting operations. Liberty Mutual maintains that Central Crude has failed to show that coverage is triggered under the Time Element Pollution Liability Coverage Extension Endorsement.

The Time Element Endorsement is designed to provide limited insurance coverage for the purpose of performing immediate cleanup for a pollution event where the insured is responsible. Liberty Mutual maintains that the prerequisites for the limited coverage under the Policy's Time Element Endorsement are not met.

Liberty Mutual argues that it is Central Crude's burden to prove coverage which it cannot do considering its admission that the spill may have been ongoing for years, and it does not know where the spill originated. Thus, Liberty Mutual maintains that because Central Crude cannot meet its burden to prove the policy's limited pollution coverage applies, Central Crude's claims against Liberty Mutual for reimbursement for past and future clean-up costs associated with the spill and defense in the CGT lawsuit should be dismissed with prejudice.

Liberty Mutual relies on the deposition testimony of Kevin Corcoran, and Mr. Vincent who both stated that the release's source had not been determined,[26] and that the release may be ongoing.[27]

First, Central Crude notes that Liberty Mutual sold it a policy that included a Time Element Pollution Liability Coverage Extension Endorsement to provide coverage when it was at fault in a pollution event under certain circumstances, namely, that the claim be made within five (5) days and that the coverage was limited to $100,000.[28] Liberty Mutual denied coverage because Central Crude could not prove its fault; specifically, because Liberty Mutual had no proof of the source of the pollution, the Time Element could not be proven.

Central Crude admits that it has never been determined that Central Crude was the source of the Paradis Incident and submits summary judgment evidence through the expert report of Dr. James Joseph Connors, Jr. Ph.D., P.G[29]. Dr. Connors opines that Central Crude could not have been at fault as to the Paradis Incident. Dr. Connors was hired to study the Paradis Incident as well as a release that occurred the prior year (the "2006 event") and to evaluate whether there was a relationship between the two events. Dr. Connors made three determinations:

1. It is essentially impossible that crude oil released by the pipeline leak discovered in the 2006 event sourced the oil observed in the Paradis Incident;

---

[26] Defendant's exhibits 5; Defendant's exhibit 6, Kevin Corcoran depo. p. 41:14-25.
[27] Defendant's exhibits 1, at p. 58:23-59:1, 73:21-74:3; Defendant's exhibit 6, p. 42:14-25.
[28] Plaintiff's opposition, pp. 5-6, doc. 119.
[29] Dr. Connors is a Louisiana-licensed geoscientist who specializes in hydrological and environmental science.

2. It is highly unlikely that any Central Crude pipeline leaks sourced the oil observed in the Paradis Incident; and

3. It is far more likely that the oil observed in the Paradis Incident was sourced by either a closer, more recent release or an historical release or releases.[30]

Specifically, in his report, Connors says:

> [t]he masses of oil discovered during the 2006 and 2007 release events are completely incompatible. Clearly the January 2007 release involved a large volume of oil that saturated at least 1.5 acres and resulted in the recovery of over 25,000 gallons of liquid.[31]

Not persuaded that the 25,000-gallon incident could have resulted from the Central Crude site, Dr. Connors opined the following:

> Given the extremely low permeability of the surficial clay unit that encapsulates the 6-inch pipeline, there would have been a great degree of oil saturation in the excavation performed at this leak site in 2006 if a large-scale release had occurred in this line earlier. The amount of oil required to account for what appeared on the Chevron property in 2007 simply could not have moved away from its source quickly in this low-permeability environment and left no tract.[32]

In other words, the 2006 pin-hole oil leak and the 2007 oil spill are entirely unrelated, and it is not possible that the 2007 oil spill could have originated from Central Crude's pipelines. Central Crude also submits a December 7, 2007 letter from the DEQ regarding the Paradis Incident which indicated that Central Crude was a "potentially responsible party,"[33] and a March 19, 2010 letter from LDEQ which states that the source

---

[30] Plaintiff's exhibit 1, p. 14, Expert report of Dr. James Joseph Connors, Jr. P.G.
[31] Id. p. 14.
[32] Id. p. 14.
[33] Plaintiff's exhibit 2.

of the Paradis Incident is inconclusive.[34] Central Crude complains that it was pressured by the LDEQ to sign a number of "cooperative agreements" that would make it financially responsible for cleanup and remediation at the oil spill site.[35]

Central Crude maintains that Liberty's Mutual's Motion for Summary Judgment must be denied because there is a genuine issue of fact for trial as to causality. There is no dispute that even as of this date, the source of the oil discharge or release is unknown. It is Central Crude's burden to prove that the Liberty Mutual policy provides coverage.

The policy unambiguously provides limited coverage for a discharge or release from a contained source, that begins and ends within five (5) days. The Time Element Endorsement is designed to provide limited insurance coverage for the purpose of performing immediate cleanup for a pollution event where the insured is responsible. Dr. Conner's opinion is that the release could not have originated from Central Crude's pipelines. Dr. Conner does not opine as to where the discharge or release originated.

Liberty Mutual presented summary judgment evidence that the discharge of oil lasted longer than five (5) day and was possibly still ongoing.[36] Central Crude has not submitted any summary judgment evidence to dispute this to create a genuine issue of fact. The Time Element Endorsement also requires that the release occur at a site (a) currently owned or occupied by, rented or loaned to the policy holder (Central Crude), or (b) on which Central Crude is performing operations.[37] Again, the source of the oil discharge is

---

[34] Plaintiff's exhibit 4.
[35] Plaintiff's exhibit 2.
[36] Defendant's exbihit 1, p. 44:23 – 45:9. Defendant's exhibit 4, p. 3; 58:23 – 59:1, 73:21 – 74:3, Defendant's exhibit 6, p. 42:14-25.
[37] Defendant's exhibit 8, LM -41-43.

unknown as of this date. Central Crude cannot show that the oil discharge occurred on a site it currently owns, occupies, rents, loans or is performing operations.

Because Central Crude has failed to show that the endorsement's narrow preconditions were met, Liberty Mutual has no duty to defend or indemnify Central Crude. Central Crude cannot establish that there is coverage, therefore, Liberty Mutual's motion for summary judgment will be granted dismissing Central Crude's claims against Liberty Mutual.

*Bad faith under Louisiana Revised Statute 22:1973*

Louisiana Revised Statute 22:1973 provides that an insurer has a duty of good faith and fair dealing and an "affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach."

Liberty Mutual maintains that because the Policy does not cover Central Crude's claims for damages related to the January 4, 2007 oil spill, there can be no bad faith for failure to pay the claim. Liberty Mutual further argues that even if the Court finds that there is a genuine issue of material fact for trial, there can be no bad faith claims because there is a legitimate coverage dispute citing *BJD Props., LLC v. Stewart Title Guaranty Co.,* 380 F.Supp. 3d 560, 574 (W.D. La. 219); *Meador v. Starr Indem. & Liab. Inc. Co.,* 2020 WL 7263182, at *4 (E.D. La. 2020); *Kodrin v. State Farm Fire & Cas. Co.,* 314 Fed. Appx. 671,(5th Cir. 2009) (unpublished).

Central Crude maintains that Liberty Mutual's failure to conduct a good faith investigation is the basis for its bad faith claim. Central Crude relies on a February 8, 2007

letter from Liberty Mutual; Central Crude asserts that Liberty Mutual made a discretionary decision to conduct an investigation but failed to conduct an investigation in good faith. Central Crude submits the deposition testimony of Tracey Chierepko, who testified that it did not hire anyone to investigate the Paradis incident, because it was cost prohibitive.[38] Furthermore, Central Crude asserts that it has alleged a bad faith claim under Louisiana Revised Statute 22:1973 on the grounds that Liberty Mutual's investigation was so minimal in scope that it was, in fact and law, a bad faith attempt to avoid coverage. *Kelly v. State Farm Fire & Cas. Co.,* 169 So.3d 328 (La. 5/5/15).

Central Crude argues that Liberty Mutual's bad faith actions and omissions left it undefended from unfounded allegations and exposed to regulatory action. Furthermore, because Liberty Mutual failed to do a real investigation, it failed to discover what was ultimately exculpatory evidence that would potentially prove Central Crude's innocence.

Central Crude seeks to recover from Liberty Mutual for its bad faith dereliction of its duty to competently and thoroughly investigate, which is the direct cause of the extensive monetary for which Central Crude now seeks recovery.

Considering that Central Crude has failed to show that there is any coverage under the Liberty Mutual Policy, the Court finds that there can be no bad faith conduct by Liberty Mutual.

---

[38] Defendant's exhibit 8, Chierepko depo. p. 36; see also Plaintiff's exhibit 7, Ronald Flowers depo. p. 76.

*Great American Assurance Company*

Great American has moved for summary judgment on the ground that the umbrella policy it issued to its insured, Central Crude, does not provide coverage. Because the Court finds that the Liberty Mutual policy does not cover the oil spill, the Great American policy, as an excess insurer, likewise does not provide coverage.

## CONCLUSION

For the reasons set forth herein, the Motion for Partial Summary Judgment filed by Liberty Mutual Insurance Company, the Motion for Summary Judgment filed by Great American Assurance Company, and the Motion for Partial Summary Judgment Concerning Bad Faith by Liberty Mutual will be granted.

**THUS DONE AND SIGNED** in Chambers on this 26th day of July, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**